**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

ALEXI ORTIZ,                       *

                Plaintiff        *

              v.              *     Case No. 8:21-CV-1169-AAQ

PRINCE GEORGE'S COUNTY, *et al*,     *

             Defendants.   *

---

**MEMORANDUM OPINION AND ORDER**

This is a case concerning the alleged failure of a local government to provide an individual due process before foreclosing upon his property. Pending before the Court is Defendants'—Prince George's County, Maryland and Stephen J. McGibbon, in his official capacity as Director and Collector of Taxes for Prince George's County—Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction. ECF No. 62. Defendants' Motion relies primarily on the Rooker-Feldman doctrine and res judicata, highlighting that this case is Plaintiff's third attempt to litigate the loss of his property. ECF No. 62-1, at 10-15; ECF No. 68, at 2-3. Despite being the focus of Defendants' Motion, Plaintiff responds to these arguments only briefly, positing that these principles do not apply because: 1) the relief he seeks in this case is distinct from that he sought in state court; and 2) the previous state court decisions did not address the merits of his claim. ECF No. 67-1, at 13-15. Because neither of Plaintiff's arguments is persuasive, the Court concludes it lacks jurisdiction, grants Defendants' Motion, and dismisses the case.[1]

---

[1] Also pending is Plaintiff's Motion for Partial Summary Judgment. ECF No. 73. Because the Court lacks jurisdiction, it cannot reach this Motion. *See Steel Co. v. Citizens for a Better Env't*,

## BACKGROUND

According to Plaintiff's Third Amended Complaint, on April 15, 2014, Plaintiff purchased property "described as 1702 Hannon Street, Unit 1, Hyattsville, Maryland 20783 for $36,500." ECF No. 47, at 4.  Although the property was "described" as such, the actual physical and mailing address of the property is 1702 Hannon Street, Unit T-2, Hyattsville, Maryland 20783.[2]  *Id.*  After the property's closing date, "the Deed was presented to the Prince George's County Department of Finance for assessment of transfer and recordation taxes, and subsequently submitted to the County's Land Records Department for processing and recordation."  *Id.*  The deed was "accompanied by copies of the State of Maryland Land Instrument Intake Sheet," which included the Unit T-2 address and Plaintiff's Montgomery County mailing address.  *Id.* at 4-5.  Despite this, Plaintiff alleges that the incorrect "Unit 1" address was recorded, along with an unrelated address of 1700 Hannon Street, Condo Unit 1, Hyattsville, MD 20783.  *Id.* at 5.  As a result, Plaintiff never received the real property tax bills for his Hyattsville property.  *Id.*

On approximately May 9, 2016, Prince George's County, pursuant to the Maryland Tax-Property Article, sold a Certificate of Tax Sale for the Subject Property at a public auction.[3]  *Id.*  In October 2017, the purchaser of the property initiated an action to foreclose Plaintiff's rights of redemption in the Circuit Court for Prince George's County.  *Id.*; ECF No. 62-6.  The Circuit

---

523 U.S. 83, 93-95 (1998) (explaining that a federal court may not issue a decision on the merits if it lacks subject-matter jurisdiction).

[2] Plaintiff's use of the passive voice in the Third Amended Complaint to describe these actions prevents the Court and the reader from determining whom Plaintiff believes was precisely responsible for the error.  The Court acknowledges that Plaintiff's use of such may be intentional given Plaintiff's lack of knowledge as to the responsible party.

[3] In his Opposition, Plaintiff lists this date as May 9, 2013.  ECF No. 67-1, at 3.  The correct date appears to be May 9, 2016, as reflected in the Third Amended Complaint and the Certificate of Tax Sale attached to Defendants' Motion.  ECF No. 47, at 5; ECF No. 62-5.

Court subsequently entered a judgment for the purchaser on June 27, 2018. ECF No. 47, at 5; ECF No. 62-15. The judgment finalized the sale of the property, vesting the purchaser with an "absolute and indefeasible Fee Simple title[.]" ECF No. 62-15, at 2.

On September 14, 2018, Plaintiff filed a Motion to Vacate the Circuit Court's Judgment on the grounds of insufficient process and "mistake, fraud and irregularity." ECF No. 62-16, at 3, 5. He raised the error stemming from the recorded mailing address which resulted in failed attempts to serve notice regarding the foreclosure. *Id.* at 3. Specifically, he alleged violations of his right to "notice and an opportunity to be heard prior to depriv[ation] of [his] property rights" pursuant to the Fourteenth Amendment to the United States Constitution, Article 24 of the Maryland Declaration of Rights, and Maryland statutory requirements as established in Md. Code Ann., Tax-Property § 14-836(b)(4)(iii) and (6). *Id.* at 3-4. The trial court denied Plaintiff's Motion, applying principles of Maryland common law as explained in *Quillens v. Moore*, 923 A.2d 15 (Md. 2007), that require a debtor to "first pay to the Collector or the certificate holder the total sum of taxes, interest, penalties, and expenses of the sale that are due" as a precondition to a successful motion to vacate a foreclosure judgment. ECF No. 62-19, at 2 (citing *Quillens*, 923 A.3d at 23-24).

Plaintiff appealed the trial court's denial of his Motion to Vacate to the Maryland Court of Special Appeals, raising two arguments in his brief. ECF No. 62-20; ECF No. 62-21. First, he asserted that the trial court "erred in relying on *Quillens* . . . to deny [his] motion to vacate" because although he had not actually paid the debt, Plaintiff had attested to his willingness to pay the full amount due. ECF No. 62-21, at 6. Second, he asserted that the trial court committed legal error when it failed to address his "alleged violations of due process" and requested that the court review the substance of those claims. *Id.*; *see also id.* at 16 ("The Circuit Court's Denial of Appellant's

3

Motion to Vacate Judgment Without Hearing Was Legal Error Where the Appellant Demonstrated a Failure of Proper Notice in Violation of His Due Process Rights.").

The appellate court acknowledged Plaintiff's due process argument "that the service attempts failed to give him actual notice." ECF No. 62-22, at 6. Nonetheless, the court affirmed the trial court, explaining that under Maryland law pursuant to *Quillens* "paying the taxes is a condition precedent to overturning a tax sale," and that Plaintiff's statement "that he was ready to pay the back taxes" was not enough. *Id.* at 11 (citing *Quillens*, 923 A.2d at Md. at 31-32). It also expounded on the reasons for this rule, noting "[t]he ability of a purchaser to foreclose the right of redemption balances the interest 'between (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale and (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right to redemption." *Id.* at 9. It then concluded that the trial court properly "issued process and public notice" in the proceedings related to Plaintiff's property. *Id.* at 10. Plaintiff then sought further review in the state court system by filing a Petition for a Writ of Certiorari from the Maryland Supreme Court, but the court denied the Petition in October 2020. ECF No. 62-23. In August 2022, Defendants executed a Tax Sale Deed. ECF No. 47, at 6.[4]

Plaintiff filed the present lawsuit on May 13, 2021, alleging, as he did in state court, that Defendants violated his rights under the U.S. Constitution and the Maryland Constitution during the foreclosure proceedings, "resulting in a deprivation of [his] property without due process and

---

[4] Plaintiff continued to litigate various issues in state court until at least April 2024, including a second appeal to the Court of Special Appeals regarding sanctions the state court imposed on him. ECF No. 62-24, at 5; ECF No. 62-25, at 3.

without just compensation." [5]  ECF No. 1; ECF No. 47, at 1.  In his Third Amended Complaint, he advances eight counts: (I) declaratory judgment as to the constitutionality of Maryland's tax sale scheme; (II) violation of the federal takings clause; (III) violation of the excessive fines clause; (IV) violation of the federal due process clause; (V) relief pursuant to 42 U.S.C. § 1983 due to violation of federal constitutional rights; (VI) violation of the Maryland constitution; (VII) violation of the Maryland Declaration of Rights; and (VIII) negligence.[6]  ECF No. 47, at 7-19.

The Statement of Facts recounts the same alleged denial of process that Plaintiff raised in state court and focuses on the allegedly deficient state-court judgment foreclosing on Plaintiff's rights to the property.  *Id.* at 4-7.  Specifically, the Third Amended Complaint notes that "on June 27, 2018, the Circuit Court entered a Judgment Foreclosing Right of Redemption, despite Plaintiff having never received the tax bills, notice of tax sale, or notice of the Foreclosure Action."  *Id.* at 5.  As a result, "Defendants sold the real property tax sale certificate for the property to a tax sale purchaser, who ultimately succeeded in foreclosing Plaintiff's rights in the Subject Property, all without ever providing actual notice of tax sale to the Plaintiff."  *Id.* at 6.  Accordingly, "Defendants failed to act prudently to ensure actual notice was being provided to Plaintiff before taking action to deprive Plaintiff of his property rights."  *Id.* at 7.  "At all relevant times, Defendants knew or should have known that the tax sale, subsequent foreclosure of the rights of redemption,

---

[5] Plaintiff initially brought suit against an additional Defendant: Michael L. Higgs, Director of the Maryland State Department of Assessments and Taxation, acting in his capacity as a local official. ECF No. 1.  The Court dismissed Director Higgs from the lawsuit on December 5, 2023.  ECF No. 39.

[6] The Third Amended Complaint labels both of the last two counts as "Count VII."  ECF No. 47, at 15, 17.  The Court re-labels the second "Count VII" for negligence as "Count VIII."

and transfer of the property . . . would deprive Plaintiff of his property rights without just compensation." *Id.*

Similar allegations undergird each of Plaintiff's claims, again emphasizing the state court's unlawful sale and transfer of Plaintiff's property over his objection. *See id.* at 10 (describing Count I: "the Maryland tax sale statute is unconstitutional as applied to Plaintiff because his property was sold for only $824.04—the amount of taxes owed—without any determination of the actual value of the property and consideration of what would constitute 'just compensation' to the Plaintiff"); *id.* at 10-11, 13, 15 (describing Counts II, III, V, and VI: "Defendants, acting under the color of law and in an official capacity, conducted a tax sale, sold the tax sale certificate, and conveyed title to the Subject Property for minimal remuneration, thus resulting in deprivation of Plaintiff's property without just compensation."); *id.* at 12, 16 (describing Count IV and VII: Defendants, acting under the color of law and in an official capacity, conducted a tax sale, sold the tax sale certificate, and conveyed title to the Subject Property in contravention of Plaintiff's constitutional rights and state law"); *id.* at 17 (describing Count VIII: "Defendants further breached their duty by conducting a tax sale in contravention of Plaintiff's constitutional and statutory due process rights when they failed to provide pre- and post-tax sale notices to the Plaintiff at the Mailing Address and Notice Address.").

As relief, Plaintiff seeks not only "a Declaratory Judgment declaring the Maryland tax sale scheme to be unconstitutional as written and as applied to the extent that it provides for the taking of property without just compensation . . . in violation of the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution," but also attorney's fees and monetary damages arising out of the state court judgment. *Id.* at 18. As the Third Amended Complaint explains, "[a]s of January 1, 2022, the Subject Property was assessed by the Defendants to be worth $95,000, and, upon

information and belief, the fair market value of the Subject Property is substantially higher." *Id.* at 7. "Furthermore, Plaintiff has suffered [a] loss of income, as he had been leasing the Property for $1,450.00 per month." *Id.*

Defendants filed the present Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction in August 2024. ECF No. 62. The Motion is now fully ripe for adjudication. ECF Nos. 67, 68.

## STANDARD OF REVIEW

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "The burden of establishing subject matter jurisdiction" lies with "the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). Motions relying on Rule 12(b)(1) share the same standard as motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Evans v. United States*, 105 F.4th 606, 615 (4th Cir. 2024) ("[W]here the defendant contends that the allegations in the complaint are insufficient to confer subject-matter jurisdiction, the district court assesses the motion under the same standard as one brought under Rule 12(b)(6)."). Accordingly, to survive a motion to dismiss for lack of jurisdiction, the complaint must "set forth facts," accepted as true, upon which the court can conclude that "jurisdiction is proper."[7] *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013); *see Ashcroft v. Iqbal*, 556

---

[7] "A defendant" can also "contest subject-matter jurisdiction" through an alternative path: "by attacking the veracity of the allegations contained in the complaint." *Durden*, 736 F.3d at 300. "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Defendants do not challenge the accuracy of Plaintiff's allegations; accordingly, the Court applies the standard for a facial challenge.

U.S. 662, 678 (2009). The Court must "draw[] all reasonable factual inferences . . . in the plaintiff's favor." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017). The plaintiff must provide more than "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and mere legal conclusions are not "entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679. In assessing a 12(b)(1) motion, "the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exits."[8] *Stahlman v. United States*, 995 F. Supp. 2d 446, 451 (D. Md. 2014) (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)); *see also Durden*, 736 F.3d at 300.

## ANALYSIS

Defendants move for dismissal on numerous grounds, raising lack of subject-matter jurisdiction, res judicata, and judgment on the pleadings. ECF No. 62. Because the Court concludes it lacks subject-matter jurisdiction, it will not address the merits of Plaintiff's claims, *see Steel Co.*, 523 U.S. at 93-95, and instead analyzes the Rooker-Feldman doctrine and res judicata.

### I.     Rooker-Feldman Doctrine

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Accordingly, "when a federal

---

[8] For this reason, the Court considers the attachments to Defendants' Motion, ECF Nos. 62-2 to 62-26, in the following analysis.

court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

The Rooker-Feldman doctrine prevents lower federal courts from exercising appellate jurisdiction over state court judgments. *Lance v. Dennis*, 546 U.S. 459, 460 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[J]urisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)). That is because Congress vested *only* the Supreme Court with jurisdiction over appeals from final state-court judgments. 28 U.S.C. § 1257; *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding that "[r]eview of such judgments may be had only in [the Supreme Court]"); *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) (explaining that Congress has not given "lower federal courts . . . any power to review directly cases from state courts").

"[T]he Rooker-Feldman doctrine is narrow and focused, 'confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (quoting *Lance*, 546 U.S. at 464). "In other words, the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020).

Plaintiff unsuccessfully raised the same arguments regarding lack of notice and due process that he advances in this case in state court. The Circuit Court for Prince George's County denied Plaintiff's Motion to Vacate its Judgement Foreclosing Right of Redemption, affirming its

previous decision extinguishing Plaintiff's right to the property. ECF No. 62-19. The Court of Special Appeals of Maryland agreed with the trial court, confirming that it "properly denied the motion to vacate." ECF No. 62-22, at 11. Plaintiff then petitioned the Maryland Supreme Court for a writ of certiorari requesting additional review, but that court denied the request on October 23, 2020. ECF No. 62-23. That denial exhausted appeal opportunities and rendered the trial court's judgment on June 27, 2018—foreclosing Plaintiff's rights to the property—final. *See Berman v. Jordan*, No. TDC-22-2695, 2024 WL 1810026, at *2 (D. Md. Apr. 25, 2024) (explaining a state-court decision was final where Plaintiff's "appeal ha[d] . . . been dismissed and his petition for a writ of certiorari to the Maryland Supreme Court ha[d] been denied"). The present lawsuit was filed on May 13, 2021, after that date. ECF No. 1.

Plaintiff's lawsuit "complain[s] of an injury caused by the state-court judgment and seek[s] federal-court review and rejection of that judgment." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). First, each count complains of injury caused by the state-court judgment which transferred interest in the property to the purchaser and foreclosed Plaintiff's rights to the same. *Lance*, 546 U.S. at 464-65; *Hulsey*, 947 F.3d at 250-51. Counts I, II, and VI allege Defendants' sale and transfer of ownership deprived Plaintiff of his property interests without just compensation in violation of the U.S. and Maryland Constitutions. ECF No. 47, at 7-10. Count III alleges Defendants sold and transferred ownership of Plaintiff's property for too small a sum, resulting in an excessive fine in violation of the U.S. Constitution. *Id.* at 10-11. Counts IV, V, and VII allege Defendants sold Plaintiff's property and conveyed title without providing the proper notice. *Id.* 12, 13-17. Count VIII alleges Defendants acted negligently when they committed the aforementioned sale and transfer of property. *Id.* 17-18. Each of these legal claims points to the same source of injury: the Maryland foreclosure judgment. The state court issued a Judgment Foreclosing the Right of

Redemption to the property, which vested the buyer with the title, ECF No. 62-15, and later denied Plaintiff's Motion to Vacate that Judgment, ECF No. 62-19. If the state court had not issued this Judgment, Plaintiff's property would not have been sold as it was, and, based on Plaintiff's Third Amended Complaint, there would be no injury. *See Moseley v. Winston*, No. RDB-18-810, 2018 WL 3740699, at *4-5 (D. Md. Aug. 7, 2018) (applying *Rooker-Feldman* where "all of [Plaintiff's] alleged constitutional injuries stem[med] from [a] child support proceeding" in state court because the requested relief "would render the judgment ineffectual").

    Although the category of cases "complaining of an injury caused by a state-court judgment" is narrow, this case falls within it. *Exxon*, 544 U.S. at 291. The Fourth Circuit has made clear that "[a] plaintiff's injury at the hands of a third party may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment." *Hulsey*, 947 F.3d at 250 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)); *see also Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719-20 (4th Cir. 2006) (concluding that Rooker-Feldman did not apply where Plaintiff lost an employment discrimination suit in Virginia state court, then raised similar complaints in federal court, because the underlying discrimination caused the harm—not the state court's judgment). For example, in *Hulsey*, Plaintiff brought suit in federal court seeking "damages, disgorgement, and injunctive relief" against Defendants—the opposing parties in the state court proceedings—"for alleged RICO violations, fraud, and abuse of process" stemming from Defendants' conduct in prosecuting several defamation suits in state court. 947 F.3d at 250. Importantly, the injury did not result from the state court judgment, but rather from third parties' allegedly fraudulent actions in pursuing their cases. *Id.* Accordingly, although the injuries occurred in the context of the state-court cases, they were "merely enabled" by the state court rulings—not caused by them. *Id.* at 251.

11

The foreclosure context in this case differs. Plaintiff's injury as he frames it—the County's sale of his property and conveyance of title without adequate process—is one and the same with the Maryland courts' orders resulting in foreclosure. *See* ECF No. 47, at 9-18 (characterizing the injury to Plaintiff as arising from Defendants' conducting a tax sale, selling a tax certificate, and conveying title). The focus of Plaintiff's claim is the state court decision as opposed to independent third-party action, such as the manner in which the purchaser pursued the property. This is more than "mere overlap between the state-court litigation and the plaintiff's claim." *Hulsey*, 947 at 251.

Moreover, Plaintiff's federal lawsuit "invit[es] district court review and rejection of [the state-court] judgments." *Thana*, 827 F.3d at 319 (quoting *Lance*, 546 U.S. at 464). Any conclusion that this Court reaches on Plaintiff's due process rights—which are invoked in Counts I, IV, V, and VII—threatens the state court's judgment. ECF No. 47, at 9, 11-14, 17. Plaintiff raised the same due process arguments in his Motion to Vacate at the state trial court and in his brief at the appeals court. ECF No. 62-16, at 3-4 (arguing to the trial court that the Judgment Foreclosing Right of Redemption violated due process requirements for "notice and an opportunity to be heard prior to depriv[ation] of . . . property rights); ECF No. 62-21, at 16-19 (raising due process arguments including the requirement of notice and an opportunity to be heard and arguing, as a result, the judgment be vacated). Plaintiff further raised just compensation in his appellate brief, requesting that the judgment be reversed and remanded so that he could have "the opportunity to redeem the property for the proper amount of money." ECF No. 62-21, at 19. The state trial court rejected these arguments, albeit implicitly, in denying the Motion to Vacate. ECF No. 62-19. The appellate court affirmed, and addressed the due process arguments more directly when it noted

that the trial court had properly "issued process and public notice."[9]  ECF No. 62-22 at 10.  As Defendants posit, ECF No. 68, at 2-3, under Maryland law, "[f]ailure of procedural due process deprives the court of jurisdiction." *Voltolina v. Prop. Homes, LLC*, 18 A.3d 944, 949 (Md. 2011). If this Court considered the merits of Plaintiff's claims and concluded a due process violation had occurred, this Court's order would effectively reject the determination of the Maryland courts and render their orders ineffectual. *See Thana*, 827 F.3d at 319-20.

The Court's conclusion is not unique.  "Courts have consistently applied the *Rooker-Feldman* doctrine to dismiss claims requesting federal district court review of a state court's eviction and foreclosure proceedings." *Sanders v. Cohn, Greenberg & Deutsch, LLC*, No. DKC-15-1571, 2016 WL 223040, at *4 (D. Md. Jan. 19, 2016) (quoting *Nott v. Bunson*, No. WMN-09-2613, 2009 WL 3271285, at *2 (D. Md. Oct. 9, 2009)) (collecting cases); *see also Wenegieme v. Nadel*, No. GLR-14-2543, 2015 WL 11090389, at *2 (D. Md. Apr. 12, 2015), *aff'd*, 619 F. App'x 261 (4th Cir. 2015) (applying Rooker-Feldman where Plaintiffs argued "the state court's judgment of foreclosure was illegal and . . . attempt[ed] to litigate the arguments previously presented to the state court in the foreclosure action").  Plaintiff's claim is comparable to that presented in *Sanford v. City of Franklin*, No. 2:15cv521, 2016 WL 8260049 (E.D. Va. Feb. 16, 2016).  There, the plaintiff "allege[d] that [d]efendant," the City of Franklin, Virginia, "unlawfully sold [p]laintiff's home at a public auction." *Id.* at *1.  In state court, the plaintiff litigated violations of "his due process rights" that the state court rejected in "one order authorizing the sale of

---

[9] Further, Rooker-Feldman applies "even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court." *Davani*, 434 F.3d at 718-19. Accordingly, Plaintiff's argument that the state court's failed to address the substance of his argument, ECF No. 62, is both untrue and inapposite. *See id.* at 719 ("Rooker–Feldman bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment." (quoting *Hoblock v. Albany Cnty. Br. of Elections*, 422 F.3d 77, 86-87 (2d Cir. 2005))).

plaintiff's home and another order explicitly rejecting the plaintiff's claims of a violation of his due process rights." *Id*. at *3.  When plaintiff later filed suit in federal district court alleging constitutional violations in the foreclosure proceedings, the district court dismissed the complaint pursuant to Rooker-Feldman because ruling on plaintiff's claims would "render [the state court] orders ineffectual." *Id.*  Similarly, in this case, the Circuit Court for Prince George's County initially issued an order transferring ownership of the property and later issued another order denying Plaintiff's Motion to Vacate despite Plaintiff's due process arguments.  ECF No. 62-19.  The Maryland Court of Appeals then affirmed, considering the merits of Plaintiff's arguments.  ECF No. 62-22.  Rooker-Feldman thus bars jurisdiction here for the same reasons that applied in *Sanford*.

Plaintiff attempts to distinguish the present lawsuit from the state court proceedings by noting the "Third Amended Complaint does not seek a review of, or to overturn, the state court's foreclosure judgment; instead, it seeks a declaratory judgment and monetary damages based on independent claims."  ECF No. 67-1, at 14.  Plaintiff's argument, however, overlooks that his request for damages in his Third Amended Complaint arises directly out of the sale of his property, the conveyance of title, and the foreclosure of his rights to the property.

The Court's holding denying jurisdiction is specific to the circumstances of this case.  As previously explained, Rooker-Feldman is a limited doctrine and

> [a] distinction must be made between actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted.  For example, in *Feldman*, the Court recognized that the plaintiff was allowed to challenge the constitutionality of a rule under which he had been denied admission to the bar, but the Court prohibited the plaintiff from challenging in federal court, the denial itself.

*Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (citing *Feldman*, 460 U.S. at 487-88).  Comparison to two cases illustrates this distinction.

First, in *Jordahl v. Democratic Party of Virginia*, Plaintiffs sought to distribute voter guides comparing the political positions of various candidates for state office, but "the Democratic Party of Virginia sought and obtained three injunctions" in state court "forbidding [them] from distributing the guides" during the 1989 and 1993 election cycles. *Id.* at 194-96. Plaintiffs later filed suit in federal court under 42 U.S.C. § 1983 alleging injury from the injunctions. *Id.* at 196. The district court dismissed these claims pursuant to Rooker-Feldman and the Fourth Circuit affirmed, explaining that plaintiffs "[did] not merely seek a declaration that the process by which the state court injunctions were issued was unconstitutional," but rather sought "to declare the Virginia state courts' decision in error, *and in turn, to award the [plaintiffs] damages as a result of the issuance of those injunctions*." *Id.* at 202 (emphasis added).

In contrast, in *LaMar v. Ebert*, 681 F. App'x 279 (4th Cir. 2017), Rooker-Feldman did not apply. There, the plaintiff had previously filed four lawsuits in state court seeking DNA testing of "human biological evidence related to the case that resulted in [his] felony conviction" pursuant to a state statute, but none succeeded. *Id.* at 281-82. Several years later, the plaintiff filed suit in federal district court alleging that the DNA statute was unconstitutional and violative of due process. *Id.* at 283. The Fourth Circuit concluded that Rooker-Feldman did not bar the claim because plaintiff "direct[ed] his attack at the constitutionality of Virginia's DNA statute—not at the state court decisions that denied him access to DNA testing." *Id.* at 287. Even though the "complaint include[d] factual allegations regarding his repeated attempts to obtain testing under the DNA statute," it explicitly focused on the broader constitutional issues. *Id.* at 287-88.

Plaintiff's Third Amended Complaint more closely tracks with *Jordahl* than *LaMar*. As described above, Plaintiff complains of injury caused by the state court's rulings allowing foreclosure of Plaintiff's property similar to the *Jordahl* plaintiffs' challenge of state-court

injunctions—not of a broader scheme or process as in *LaMar*. *See generally* ECF No. 47. The legal basis of each count in the Third Amended Complaint explicitly focuses on the final sale of Plaintiff's property over his objections. See *id.* at 8-11 (characterizing the injury under Counts I, II, and III as the sale of Plaintiff's property "without just compensation," amounting to an excessive fine); *id.* at 12 (characterizing the injury under Count IV as failure to provide due process prior to the sale of Plaintiff's property); *id.* at 13-18 (characterizing injury under Counts V, VI, VII, and VIII as the same). The Statement of Facts focuses on Plaintiff's loss of the subject property with no mention of other properties or potential for future harm. *Id.* at 4-7. Although the Plaintiff in *LaMar* mentioned his own factual circumstances, it was obvious to the court that the focus of the lawsuit was the constitutionality of Virginia's DNA statute as a whole. 681 F. App'x at 287-88. The same is not true here—the Complaint is limited in its focus on Plaintiff's particular foreclosed property. *See generally* ECF No. 47; ECF No. 73-1.[10] Additionally, like *Jordahl*, Plaintiff specifically requests damages arising out of the unlawful sale of his property. ECF No. 47, at 18; *see also* ECF No. 67-1, at 15 (emphasizing in opposition to Defendants' Motion that in this action, Plaintiff seeks "monetary relief in the form actual and compensatory damages").

---

[10] Although the Court does not address the substance of the Motion, Plaintiff's Motion for Summary Judgment reinforces this point. The only injury Plaintiff discusses therein is the sale of his property. ECF No. 73-1. Plaintiff's Statement of Undisputed Material Facts does not mention any other properties or potential for future harm. *Id.* at 3-8. His discussion of federal and state due process violations solely analyzes the state-court tax sale and foreclosure proceedings. *Id.* at 10-18 (summarizing the section as establishing that "Plaintiff was deprived of his property by the Defendants pursuant to a tax sale conducted without providing constitutionally adequate notice"). The same is true of his arguments related to just compensation and excessive fines. *Id.* at 18-23 (summarizing the section as establishing that "Defendants' policy, practice, or custom of holding tax sales for the [sic] bear minimum bid value [thus] led to the Plaintiff receiving no compensation for his property interests, let alone 'just compensation'"); *id.* at 23-25 (explaining an excessive fine resulted from Defendants' sale of Plaintiff's property "for the exact sum of the taxes due, even though the property had an assessed value" that was much higher).

A complaint more similar to that in *LaMar* could, for example, identify a possible future injury, like the use of the same allegedly constitutionally unsound procedures of which Plaintiff complains here with respect to other properties, and include only a forward-looking request for injunctive relief. The mere reference to the foreclosure of Plaintiff's property in this case would not require application of Rooker-Feldman so long as the focus of the case was not the award of monetary damages based on the previous judgment or a determination that the previous judgment was in error.

Plaintiff comes closest to meeting this exception's requirements in Count I, which "seeks a declaratory judgment as to the constitutionality of Maryland's tax sale scheme to the extent that it provides for, and results in, the transfer of private property by a government unit without just compensation to the property owner in violation of the . . . U.S. Constitution." ECF No. 47, at 9. This could be interpreted as a more general challenge, but Plaintiff's Third Amended Complaint, read as a whole, makes clear that this lawsuit's focus is Plaintiff's particular circumstance. Indeed, in the same count, Plaintiff makes clear that his focus is unconstitutionality "as applied to Plaintiff," and refocuses on the allegedly insufficient process that "effectively imposed an excessive fine on Plaintiff for failing to pay real property taxes." *Id.* at 8-9.

In sum, a plaintiff in federal court seeking to challenge their property's foreclosure in state court proceedings may: 1) seek redress for injuries arising out of the methods that defendant employed in pursuing the plaintiff's property in state court, such as litigation costs or emotional distress resulting from defendants' employment of fraud or discrimination in pursuit of the property; or 2) advance a broad substantive challenge to a particular policy or practice that is used in foreclosure proceedings, seeking declaratory or injunctive relief that is forward-looking, as opposed to focused on a specific, completed foreclosure. Plaintiff does neither; rather, Plaintiff

requests monetary damages arising out of the judgement foreclosing his rights to the property. Accordingly, Rooker-Feldman applies.

## II.    Res Judicata

Even if Rooker-Feldman did not bar Count I, the doctrine of res judicata would.   In Maryland, res judicata bars re-litigation of a claim if (1) the parties are the same as in the earlier dispute; (2) the claim in the current litigation is the same as that which was previously raised, or substantially similar such that it should have been raised in the earlier case; and (3) there is a final judgment on the merits. *Anne Arundel Cnty Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005).   Here, all three conditions are met.   Prince George's County was a party to the state foreclosure action.   ECF No. 62-6 (naming Prince George's County in the Maryland litigation). The claim of unconstitutional process was raised in state court, and even though it is not identical, the framing used in federal court could or should have been raised at the time of the original action. Finally, there was a final judgment on the merits of the state lawsuit. *See Bank of New York Mellon v. Georg*, 175 A.3d 720, 750 (Md. 2017) ("Generally speaking, for a trial court's ruling to constitute a final judgment, the ruling 'must, among other things, be an unqualified, final disposition of the matter in controversy'" (quoting *Addison v. Lochearn Nursing Home, LLC*, 983 A.2d 138, 145 (Md. 2009)); *Myers v. Katz*, No. 946, 2019 WL 2760630, at *2 (Md. App. Ct. July 1, 2019) (holding that an order denying a motion to vacate a foreclosure sale that was affirmed on appeal constitutes a final judgment on the merits).

Despite Plaintiff's argument to the contrary, it does not matter that the relief he seeks under Count I—"a declaratory judgment as to the constitutionality of Maryland's tax scheme"—differs in name from that which he sought in the state-court litigation.   ECF No. 67-1, at 14-15; ECF No. 47, at 9.   "[W]hen a type of [relief] was not sought in a prior action but had accrued and could

18

have been sought, res judicata bars a second suit for that type of [relief]." *ACAS, LLC v. Charter Oak Fire Ins. Co.*, 627 F. Supp. 3d 866, 877 (D. Md. 2022) (citing *Gonsalves v. Bingel*, 5 A.3d 768, 782-83 (Md. 2010)); *see also Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 234 (1998) (explaining there is "no reason why the preclusive effects of . . . res judicata . . . should differ depending solely upon the type of relief sought in a civil action").

Plaintiff did not explicitly seek a declaratory judgment in the state proceedings, but he could have.  Plaintiff moved to vacate the June 27, 2018 Order pursuant to Md. R. Civ. P. Cir. Ct. 2-535(b). ECF No. 62-16, at 2.  The rule states that a court may take any action that it could have taken under Rule 2-534 including entering a new judgment.  Md. R. Civ. P. Cir. Ct. §§ 2-534 & 2-535(b); *see also* Md. Code Ann. Courts and Judicial Proceedings §3-409(a)(3) ("a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if . . . [a] party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it).  Further, his request that the Maryland appellate court conclude that the trial court violated his constitutional rights implicitly raised this request.  *See* ECF No. 62-21, at 19 (asking the court find that the lower court erred as a matter of law because the plaintiff was not provided sufficient notice before the judgment of foreclosure was entered).  Accordingly, even if Rooker-Feldman did not bar Count I, res judicata would.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion, ECF No. 62, is granted.  The case shall be closed.

So ordered.

Dated: January 27, 2025                              _____/s/_____
                                                     Ajmel A. Quereshi
                                                     United States Magistrate Judge